**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hopi Tribe,<br><br>                    Plaintiff,<br><br>v.<br><br>Navajo Nation,<br><br>                    Defendant. | No. CV-13-08172-PCT-GMS<br><br>**ORDER** |

Pending before the Court are Plaintiff Hopi Tribe's Motion to Vacate Arbitration Decision, (Doc. 3), Defendant Navajo Nation's Motion to Dismiss the Hopi Tribe's First Claim for Relief, (Doc. 14), and Motion to Dismiss the Hopi Tribe's Second and Third Claims for Relief, (Doc. 15). For the reasons discussed below and based on the third claim from the Hopi's Complaint, the Motion to Vacate is granted and the matter is remanded to arbitration. The Motion to Dismiss the First Claim is dismissed as moot. The Motion to Dismiss the Second and Third Claims is granted in part and denied in part.

## BACKGROUND

Plaintiff Hopi Tribe and Defendant Navajo Nation entered into an Intergovernmental Compact (the "Compact") settling a long-standing dispute over, in part, access to each other's lands and resources for religious purposes and the enforcement of trespass laws and other regulations against religious pilgrims. This action arises from a dispute over the meaning and applicability of the Compact.

/ / /

/ / /

In 1934, Congress established a Navajo reservation for the benefit of the Navajo people and for other Indians already located thereon in northeastern Arizona.[1] (Doc. 1 (Compl.) ¶ 3 (citing *Masayesva v. Zah*, 65 F.3d 1445, 1450 (9th Cir. 1995)).) Forty years later, Congress passed the Navajo-Hopi Land Settlement Act, 25 U.S.C. §§ 640d to 640d-31, enabling the Navajo Nation and Hopi Tribe to sue each other as a means of settling their continuing dispute over which Party was entitled to which lands in the 1934 reservation. *Id.* That year, the Hopi Tribe commenced an action against the Navajo Nation in this Court, which culminated in the Compact in 2006. *Id.*

The Compact was approved and made part of an Order issued by this Court. (Doc. 1 (Compl.) ¶ 3 (citing Order & Final Judgment, *Honyoama v. Shirley*, Case No. 74-842 (D. Ariz. Dec. 5, 2006), Doc. 1149).) Under the Compact, the Parties grant to each other the right to engage in traditional religious practices in designated areas. Some of those designated areas are drawn on a confidential map which is attached to the Compact as Exhibit B. The disputed substantive portion of the Compact states:

> The Navajo Nation grants to the Hopi Tribe, for the use and benefit of all current and future enrolled members of the Hopi Tribe, a permanent, irrevocable, prepaid, non-exclusive easement, profit, license, and permit to come upon the Navajo Lands, and to gather and remove fledgling Golden Eagles and hawks within the areas depicted on Exhibit B, and to gather and remove minerals and plant materials for religious and medicinal purposes from the Navajo Lands generally; provided, however, that such materials and things shall not be gathered for sale or other commercial purposes. This Compact does not grant to the Hopi Tribe or its members any easement, profit, license, permit, or right to gather or remove any Golden Eagle or hawk from any part of the Navajo Lands outside the areas depicted on Exhibit B, and this Compact does not prevent, limit or restrict the Navajo Nation from enforcing any law governing trespass, hunting or interference with wildlife against any person who comes upon any part of the Navajo

---

[1] For purposes of the Navajo Nation's motions to dismiss, the Court takes as true the allegations contained in the Hopi Tribe's Complaint. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996) (applying the standard to a motion to dismiss under 12(b)(6)); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (applying the same standard to a motion to dismiss under 12(b)(2)).

>Lands outside the areas depicted on Exhibit B for the purpose of gathering or removing any Golden Eagle or hawk. This Compact does not waive, limit or restrict any right the Hopi Tribe or its members may have under the United States Constitution or federal law to come upon any part of the Navajo Lands outside the areas depicted on Exhibit B for the purpose of gathering or removing any Golden Eagle or hawk.

(Doc. 3-1, Ex. 1 (Compact) § 2.4.)

The Parties formed the Compact out of a "desire to resolve both the disputes involved in the Litigation and others." (*Id.* at "Recitals".) In the event that a dispute does arise under the Compact and negotiations fail, the Parties waive their sovereign immunity to resolve it through arbitration or suit as provided in the Compact. (*Id.* § 8.9.) Arbitration is conducted before a Joint Commission (the "Commission") made up of two representatives from each party and a neutral fifth member. (*Id.* § 8.1.)  It provides an arbitration framework as follows:

>Any dispute arising under this Compact that is not resolved by negotiation may be submitted to the Joint Commission for arbitration, which shall be commenced by mailing a written demand for arbitration setting forth in detail the dispute and the relief requested to each member of the Joint Commission and the other party, by registered or certified mail, postage prepaid. Arbitration before the Joint Commission shall be the only procedure and the only forum for resolution of such disputes unless and until the Joint Commission shall fail to make a decision within the period specified in Section 8.4.
>
>The Joint Commission shall establish its own rules and procedures not inconsistent with the terms of this Compact for the resolution of any dispute which is the subject of a demand for arbitration, hearing such evidence and argument as it may, in its discretion, choose to accept. When any dispute is so submitted, the Joint Commission shall decide and resolve the dispute by issuing a written Decision and Award signed by a majority of the 5 members within 180 days after the date on which the demand for arbitration shall have been mailed to the last of the members of the Joint Commission and the other party.
>
>The Joint Commission in its Decision and Award shall have the authority to issue restraining orders, injunctions, declaratory judgments, and orders of specific performance enforcing the terms of this Compact, but shall not

have the authority to award damages, attorneys' fees, or the costs of arbitration.

(*Id.* §§ 8.3–8.5.)

The Compact authorizes federal court review of arbitration decisions and awards by this Court, but they "may be vacated or modified only on the grounds permitted under the Federal Arbitration Act (9 U.S.C § 1 *et seq.*) as it exists on the Effective Date." (*Id.* § 8.6.) In limited circumstances, the Compact also allows for original enforcement and dispute resolution proceedings in this Court. (*Id.* §§ 8.7–8.8.) This only occurs if the neutral fifth member of the Commission is not serving or appointed, or if the Commission "shall fail to issue a Decision and Award" within 180 days. (*Id.*)

In May 2012, a Navajo law enforcement officer stopped a member of the Hopi Tribe who was accessing a religious site located within a designated area that the officer believed was also part of an "allotment." (Doc. 1 (Compl.) ¶ 41.) Allotments are parcels of land awarded by Congress to individual members of Indian tribes under the General Allotment Act (the "GAA") and held in trust by the Secretary of the Interior of the United States. (*Id.* ¶ 42.) It is now uncontested that the site was not on an allotment, but the Hopi Tribe member may have entered or crossed an allotment at some earlier point. After the incident, the Parties entered into negotiations to resolve their dispute over access to allotted lands within the designated areas but were unsuccessful. (*Id.* ¶ 48.)

The Navajo Nation has alerted the Hopi Tribe that criminal prosecution will follow future incidents involving Hopis accessing allotments. (*Id.* ¶ 45.) The Navajo Nation alleges that it does not have the authority to grant access to allotments. (*Id.* ¶ 46.) The Hopi Tribe maintains that, regardless of the allotted status of some of the land, the Tribe has been granted access to the designated areas under the Compact or that at a minimum the Navajo Nation has agreed not to interfere with access to the designated areas. (*Id.* ¶¶ 38–39.)

On October 23, 2012, the Hopi Tribe made a Demand for Arbitration to the Commission. (*Id.* ¶ 48.) The Hopi Tribe alleged that the Navajo Nation had breached the

Compact by denying access to allotments, and it requested[2]

> a declaratory judgment and an order of specific performance that . . . members of the Hopi Tribe can access and collect golden eagles and hawks from all areas depicted on Exhibit B in accordance with the terms of the Compact, without regard to the land status of the underlying lands, including whether the lands have been "allotted" to individual members of the Navajo Nation . . . .
>
> . . . .
>
> The Hopi Tribe also seeks a preliminary and permanent injunction enjoining the Navajo Nation from . . . interfering with Hopi religious practitioners who access or gather eagles from the areas depicted on Exhibit B in accordance with the terms of the Compact, including, but not limited to, barring the Navajo Nation from bringing any legal action against members of the Hopi Tribe for coming onto or collecting eagles from "allotments" within the areas depicted on the Exhibit B map . . . .

(Doc. 21, Ex. 2 (Demand for Arbitration) at 7–8.)

In response, the Navajo Nation filed a Motion to Dismiss for lack of jurisdiction and authority to grant relief on November 30, 2012. (Doc. 1 (Compl.) ¶ 56; Doc. 21-1, Ex. 4 (Navajo Nation's Mot. to Dismiss).) The Nation argued that the Commission lacked authority and jurisdiction to grant the Hopi Tribe relief for three reasons: (1) the language of the Compact does not grant or require access to allotted lands; (2) the requested relief implicates property rights held by allottees and the United States which are not parties to the Compact and have not subjected themselves to the Commission's jurisdiction; and (3) the allottees and the United States are necessary parties to any proceeding in which such relief can be obtained, but have not been and cannot be joined in the arbitration. (Doc. 21-1, Ex. 4 (Navajo Nation's Mot. to Dismiss) at 2, 5–6.)

At an arbitration hearing on April 9, 2013, Judge Kenneth Fields stated the

---

[2] The Hopi Tribe also alleged that the Navajo Nation was not performing its obligations under Article 4 of the Compact to prevent new development in Non-Development Zones depicted therein. Although the Hopi Tribe submitted that dispute to arbitration, it does not bring that dispute to this Court. (*See* Doc. 1 ¶¶ 15, 18.)

Commission's intention that it would grant the Motion to Dismiss for lack of jurisdiction. (Doc. 1 (Compl.) ¶ 59; Doc. 21-2, Ex. 6 (April 9, 2013 Hearing) at 90, 92.) On April 17, the Commission issued a written Decision granting the Motion. (Doc. 21-2, Ex. 9 (Arbitration Decision).) The Decision states that "[the Commission] lacks jurisdiction to consider the dispute involving allotted lands since it has no jurisdiction over the allotment holders and the U.S. Secretary of the Interior (the allotment trustee) under the [Compact]. The jurisdiction lies with the United States District Court." (*Id.* at 2.) Further, "should the U.S. Courts determine that the Joint Commission has jurisdiction over the allotments then the Commission would take such jurisdiction." (*Id.*)

The Hopi Tribe filed this action on July 5. (Doc. 1 (Compl.).) The Tribe first alleges breach of the Compact and brings that claim under Section 8.8 because it asserts that the Commission failed to issue a Decision and Award. (*Id.* at 12–13.) Next, the Tribe alleges that the Commission's decision to dismiss the case for lack of jurisdiction should be vacated under the Federal Arbitration Act ("FAA") for failure to hear evidence pursuant, 9 U.S.C. § 10(a)(3), and to make a mutual, final, and definite arbitration award, *id*. § 10(a)(4). (*Id.* at 13–15.) The Tribe requests the Court to declare that the Navajo Nation agreed not to prevent access to the allotted lands within its boundaries to the Tribe and that the Nation may fulfill that agreement by not enforcing regulatory laws on those lands. (*Id.* at 15.) The Tribe further requests the Court to enjoin the Nation from taking any enforcement actions against members of the Tribe for accessing sites on the allotments. (*Id*.) In the alternative, the Tribe seeks an order vacating the Commission's decision, finding that the Commission has jurisdiction, and remanding the matter for an evidentiary hearing and ruling on the merits. (*Id.*)

The Hopi Tribe filed a separate Motion to vacate the arbitration on the grounds described above. (Doc. 3.) The Navajo Nation moved to dismiss all of the Hopi Tribe's claims. (Docs. 14, 23.) This Court held a hearing on the matter on October 18, 2013.

**DISCUSSION**

## I. Order of Remedies

The Hopi Tribe asks the Court for two alternative forms of relief based on different enforcement mechanisms provided in the Compact. Initially it asks for this Court to resolve the dispute under section 8.8 of the Compact, which authorizes direct litigation in this Court if the Commission fails to issue a timely "Decision and Award." In the alternative, it asks the Court to vacate the Commission's determination that it lacked jurisdiction and remand under section 8.5, which authorizes judicial review pursuant to the FAA. The Court must consider whether the Compact indicates which mechanism of relief should be considered first.

The Compact establishes a clear hierarchy for enforcement and dispute resolution. First, section 8.2 states that the parties "shall attempt in good faith to negotiate and resolve any dispute arising under this Compact." (Doc. 3-1, Ex. 1 (Compact) § 8.2.) These negotiations must occur before the dispute can be submitted to the Commission for arbitration. (*Id.* §§ 8.2–8.3.) Arbitration before the Commission is the next step in the hierarchy, and "shall be the only procedure and the only forum for resolution of such disputes unless and until the Joint Commission shall fail to make a decision within [180 days]." (*Id.* § 8.3.) While this Court may review the outcome of arbitration, direct litigation in this Court is only permitted "[i]n the event" that the Commission is missing its neutral fifth member or that it "fail[s] to issue a Decision and Award within [180 days]." (*Id.* § 8.3.)

The Compact makes it clear that negotiation between the Parties is the preferred method of resolution followed by an arbitration in which both Parties are represented on the Commission. Direct litigation in this Court is only permitted in two narrow and exceptional circumstances. This is in keeping with the recitals in the Compact which emphasize the sovereign autonomy of the parties and their desires to live in harmony as neighbors. (*Id.* at "Recitals.") The Court will therefore address whether relief can be granted by reviewing the Commission's arbitration decision under the FAA before

considering the exceptional mechanism of direct litigation.

## II.     Review Under the Federal Arbitration Act

Under the Compact, the Parties waive sovereign immunity to authorize this Court to vacate or modify a decision of the Commission "only on the grounds permitted under the Federal Arbitration Act (9 U.S.C. §1 *et seq.*) as it exists on the Effective Date." (Doc. 3-1, Ex. 1 (Compact) § 8.6.) The FAA authorizes district courts to enforce or vacate an arbitration award entered pursuant to an agreement between parties. *See* 9 U.S.C. §§ 9–11. Judicial review of an arbitration award is "both limited and highly deferential." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). The Act permits vacatur of arbitration awards in several circumstances, including:

> (3) where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or . . .
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (2006). The burden of establishing grounds for vacatur is on the party seeking it. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). The Hopi Tribe argues for vacatur for two reasons.

First, the Hopi Tribe contends that the Commission refused to hear pertinent and material evidence before dismissing the Demand for Arbitration. Under the FAA, an arbitrator must provide parties with an "adequate opportunity to present its evidence and arguments." *U.S. Life*, 591 F.3d at 1175 (quoting *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987)). Nonetheless, arbitrators enjoy "wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit." *U.S. Life*, 591 F.3d at 1175 (internal citation omitted).

Second, the Hopi Tribe also argues that by dismissing its claims for lack of jurisdiction, and not resolving the dispute over the meaning of the Compact, the Commission exceeded its powers or imperfectly executed them. "The Federal Arbitration

Act 'requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.'" *W. Employers Ins. Co. v. Jefferies & Co., Inc.*, 958 F.2d 258, 261 (9th Cir. 1992) (quoting *Volt Info. Sciences v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)). Parties "have a right to arbitration according to the terms for which it contracted," and "arbitrators can also 'exceed their powers' . . . when they fail to meet *their* obligations, as specified in a given contract, to the parties. *Id.* at 261–62 (emphasis in original).

Here, the parties entered into a Compact and agreed that its terms would be binding upon both the Navajo Nation and the Hopi Tribe. As part of that contractual agreement, they agreed that "any dispute arising under [the] Compact" would be resolved through the procedures established by the Compact. (Doc. 3-1, Ex. 1 (Compact) §§ 8.2–8.3.) In most cases, including this one, arbitration between the two parties before the Commission was agreed to be "the only procedure and the only forum for resolution of such disputes." (*Id.* § 8.4.) The Compact explicitly provides that tribal members do not "have the right as an individual to institute or participate in any legal proceeding involving [the] Compact." (*Id.* § 8.4.) Therefore, the Compact clearly dictates that arbitration before the Commission, involving only the two parties to the Compact, is the only forum and only procedure in which to resolve disputes about the meaning of the Compact.

The Commission exceeded its powers when it determined that the federal court and not the Commission should resolve the dispute over the meaning of the Compact because in doing so it failed to meet its obligation to provide arbitration according to the terms of the Compact. The parties only agreed to relinquish their sovereign immunity and be sued in federal courts so that the District of Arizona could conduct a review of the Commission's decisions as limited by the Federal Arbitration Act, or in the exceptional case where the Commission is not properly constituted or fails to issue a Decision and Award. The agreement by both Parties to submit to arbitration is a fundamental aspect of the Compact because the sovereign immunity of both Parties limits the availability of

standard judicial proceedings. In other words, a claim that the Navajo Nation agreed under the Compact not to prosecute Hopis present on allotted lands that fall within the boundaries of the Navajo Nation when the Hopis are accessing such lands for purposes identified in the Compact would have to be brought in the first instance to the Commission and not to federal court. It could not be brought in federal court because the Tribes have not agreed to waive their sovereign immunity to bring it here in the first instance. This reality does not change merely because the overall nature of the claim also implicates the interests of the holders of the allotment and the federal government as their Trustee. The Commission has the jurisdiction to interpret and implement the terms of the Compact as among those who are bound by it. It is, in fact, the only entity that, barring one of the exceptions discussed above, has such jurisdiction in the first instance.

While the Commission can decide what the parties did or did not agree to do under the Compact with respect to allotted lands, this decision does not necessarily bind the allottees or the federal government as their Trustee in determining what Hopis, as a legal matter, may or may not do as an absolute matter on allotted lands within the Navajo Nation Indian Reservation. It can only bind those to whom the Compact extends. Nevertheless, that the Commission may not be able to resolve all the rights of all persons as it relates to such allotted lands, does not prevent the Commission from deciding what the Compact permits and to whom it applies, subject to the limited review provided this Court by the Compact itself.

Here, the Commission chose not to resolve a dispute over the meaning of the Compact out of apparent concern as to what the practical effect of its interpretation might be on non-parties to the Compact. Nevertheless, the Commission, in this respect, is not akin to a court of law. It is neither its job, nor its jurisdiction, to adjudicate or even to protect all conceivable rights pertaining to the affected land within either of the reservations. Such a function belongs to the nations who govern such land, and to the extent it may be applicable, to the United States government as trustee. The job of the Commission is to determine the extent to which, if any, the parties to the Compact have

agreed to act or not to act with respect to the activities that are the subject of the Compact. It is not the job of the commission to decide the rights that the allottees themselves may have against their own governments under tribal, or other law. Nor is it the job of the Commission to apply any other possibly applicable tribal or federal law, except the terms of the Compact. The reality that its decision may have some practical effects on others does not relieve it from resolving, in the first instance, the dispute about the meaning of the Compact and then determining what orders it may or may not issue in order to bring those bound by the Compact into compliance.

There is no requirement that every person who might be affected by an arbitration must be a party in the arbitration proceedings. *Lindland v. U.S. Wrestling Ass'n, Inc.*, 230 F.3d 1036, 1039 (7th Cir. 2000). In *Lindland*, a wrestler who did not make the Olympic team prevailed in an arbitration proceeding that ordered a rematch in which the wrestler won. *Id.* at 1037. The United States Olympic Committee and USA Wrestling argued that the arbitration award was not valid because another wrestler, who would lose his spot on the Olympic team, was not included in the arbitration. *Id.* at 1039. The court held that

> "[t]he notion, advanced . . . , that an arbitration must include all persons who could be affected by the outcome is novel and would work a revolution in arbitral proceedings. Neither [organization] has cited any authority for the proposition that a person potentially affected by an arbitration is a necessary party to it."

*Id.* The court went on to note that the other, non-party wrestler is "not 'bound' by the result, but USA Wrestling is, and it must implement the award." *Id.* As shown in *Lindland*, the Commission can resolve the arbitration dispute between the Parties even if the rights of third-parties may be affected. In this case, the parties explicitly agreed in the Compact that no other party may ever be included in a dispute over the meaning of the Compact.

The Commission must determine the obligations of the Parties under the Compact before it can determine the appropriate remedies. The Parties disagree about the interpretation of the Compact. The Commission must look at the language of the

- 11 -

Compact and any parole evidence permitted under the construction provisions of the Compact itself to determine whether the Navajo Nation promised either rights of access or rights against enforcement.

The Commission has broad remedial authority to implement its interpretation of the Compact. This Court will not address the permissibility of the various remedies the Parties have suggested, having no need to do so unless and until it is appropriate for this Court to again take up this matter.

In addition to the arguments over the legality of various remedies, the Hopi Tribe and Navajo Nation make various other arguments that do not affect the outcome here. The Hopi argue that the Commission did not consider material evidence in reaching its decision, but the Commission never reached the meaning of the Compact in a way that would have required it to hear evidence on that issue. The Navajo Nation argues that the outcome of arbitration should be given great deference. However, the Commission determined that it had no jurisdiction and therefore it made no award. It made no factual determinations or interpretation of the Compact and so there is little for this Court to defer to.[3] The only legal determination the Commission made was that it lacked jurisdiction and that the dispute should be heard in this Court. As discussed above, that determination was mistaken.

The Commission explicitly ruled that if this Court determines that the Commission has jurisdiction then it would hear the matter. The Commission has jurisdiction over this matter because it is a dispute arising under the Compact. To the extent that the Commission interprets the Hopi Tribe to request it to order relief against the allotment

---

[3] While the Commission did generally say that it was granting the motion to dismiss for the reasons stated in the Navajo Nation's motion, that does not mean that it adopted every legal position advanced in that motion. In fact the written decision and order specifies that the motion was granted in part and denied in part. Critically, if the Commission had actually adopted the Navajo Nation's position that the Compact does not cover allotted lands, then there would have been no reason to dismiss for lack of jurisdiction over those lands.

- 12 -

holders directly, it need not do so unless for some reason or purposes it determines that they are covered by the terms of the Compact.

## CONCLUSION

The Commission has jurisdiction to decide the meaning of the Compact and has the authority to direct those bound by the Compact to fulfill their commitments under it. Therefore, the Commission's dismissal for lack of jurisdiction is vacated and the matter is remanded for further action by the Commission. Because arbitration by the Commission is the preferred method of dispute resolution, the Court will not consider whether the exceptional method of direct litigation in this Court might also have been permissible under section 8.8.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Vacate Arbitration Decision, (Doc. 3), is **granted**. The matter is remanded to the Commission, and the Clerk is directed to terminate this action.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss the Hopi Tribe's Second and Third Claims for Relief, (Doc. 15), is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss the Hopi Tribe's First Claim for Relief, (Doc. 14), is **dismissed as moot**.

Dated this 8th day of November, 2013.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge